Lloyd W. SAHLEY, Plaintiff-Appellee,
and
International Finance Corporation, New-
Party Plaintiff-Appellee,

v.

Mark T. McKEE, Defendant-Appellant,
and

Ladenburg, Thalmann & Co., a co-partner-
ship composed of Harry B. Lake, Henry
March, John Rosenthal, Otto Marx, Jr.,
Leo G. Shaw and Carl K. Erpf, Defend-
ant.

No. 203, Docket 30657.

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1966.
Decided Jan. 20, 1967.

James H. Halpin, New York City
(Kissam & Halpin, New York City,
James J. Harrington, New York City,
of counsel, on the brief), for appellant.

Alan E. Bandler, New York City
(Kramer, Bandler & Labaton, New York
City, Sidney Kramer, New York City, of
counsel, on the brief), for appellee.

Before WATERMAN, MOORE, and
HAYS, Circuit Judges.

MOORE, Circuit Judge:

Lloyd W. Sahley, plaintiff, and Mark
T. McKee, defendant, agreed to embark
on a joint venture whereby McKee would
arrange for the acquisition and financ-
ing of companies brought to his atten-
tion by Sahley. All fees received by
McKee were to be split evenly. Pursuant
to this agreement, Sahley introduced Mc-
Kee to the owners of Guerdon Industries,
Inc. (Guerdon), a corporation engaged in
the manufacturing of mobile houses, and
McKee successfully brought about the ac-
quisition of Guerdon stock by Laden-
burg, Thalmann & Co. (Ladenburg), pri-
vate bankers, a defendant below, who
subsequently refinanced Guerdon by a
public stock offering.[1] McKee was to re-
ceive $250,000 in connection with this
transaction, $150,000 from the stock-

---

1. The district court found below that
Sahley had no direct claim against Laden-
burg for a finder's fee and additionally
that Ladenburg had not conspired with
McKee to deprive Sahley of his share of
the moneys paid to McKee by Ladenburg.

holders of Guerdon and $100,000 from Ladenburg. These facts were found by the district court after the introduction of much highly conflicting testimony. McKee does not attack these findings on this appeal.

The principal dispute on appeal concerns the amount paid to Sahley prior to the trial in partial satisfaction of Sahley's $125,000 share of the Guerdon fee. It is conceded that Sahley received $38,000 from McKee ($37,000 in cash plus an authorized $1,000 investment in Jensen Associates by McKee in Sahley's name), but McKee claims that an additional payment of $37,000 was made. The district court rejected this claim. McKee also questions the district court's findings on the extent to which he is liable for part of the moneys received from Ladenburg and the date from which preverdict interest should be computed on Sahley's share.

*The investment in Jensen Associates*

A photocopy of a check for $37,000 drawn by Gurdon T. Wolfe (a chief stockholder of Guerdon) payable to Mark McKee was introduced into evidence below. The check was endorsed by McKee: "Pay to Jensen Associates for purchase of stock for Sahley Corporation in like amount," and was duly deposited in Jensen Associates' account. Sahley, the holder of a 75% interest in Sahley Corporation, admitted in a deposition that Sahley Corporation was notified of the investment, which was subsequently entered as income in the corporation's books. McKee's claim is that, prior to this investment, Sahley assigned his interest in the Guerdon fee to his corporation and that the corporation's entry of the $37,000 investment as income on its books evidenced acquiescence to that mode of receipt of Sahley's share of the Guerdon fee. We find it unnecessary to pass on whether there was an assignment of Sahley's interest in the Guerdon fee to his corporation at the time of the Jensen investment, as we believe the record

adequately supports the district court's conclusion that the $37,000 investment was never authorized by Sahley or his corporation.

Jensen Associates was incorporated in Delaware in May, 1959, mainly upon the initiative of Sahley and McKee, for the purpose of financing and setting up mobile home parks. McKee was to act as the financial promoter of the corporation and Sahley was to do much of the engineering and mechanical work. Apparently, each of ten directors put up an initial $1,000 (with McKee putting up Sahley's $1,000—included in the $38,000 of the Guerdon fee that Sahley concedes he received). In September, 1959, at a subsequent directors' meeting, McKee reported that Ladenburg was willing to invest $200,000 in Jensen Associates if each director would provide another $20,000. Sahley, who was running short of funds, testified that McKee told him, "you don't have to worry about it."

The endorsement and payment stamps on the $37,000 Wolfe check establish that Jensen Associates deposited the check and that the drawee, Irving Trust Company, paid the check on October 22, 1959. Yet in November, Sahley, on pressing for more of his share of the Guerdon fee, was assured by McKee that his share would be forthcoming, no mention being made of the $37,000 investment in Jensen. Sahley further testified that it wasn't until January, 1960 that the investment was entered on Sahley Corporation's books, and that both prior and subsequent to that time McKee made further assurances that Sahley would get a direct payment of the rest of his share of the Guerdon fee. Viewing the evidence favorably to Sahley, it appears that McKee deliberately misled Sahley as to McKee's receipt of the Guerdon fee and as to the extent of Sahley's commitment to Jensen Associates, while McKee had, in fact, invested the money in Jensen Associates in a totally unauthorized amount.[2] The

2. As it turned out, the expansion plans for Jensen Associates did not materialize so that all investments in the corporation eventually proved worthless.

district court was in a position to judge credibility—an especially important element in this case—and on the basis of the record, his finding against McKee with respect to the $37,000 investment in Jensen Associates is accepted.

### Pre-Verdict Interest

McKee argued below that the $100,000 due to him from Ladenburg was not connected with the Guerdon deal and that Sahley, therefore, had no interest in it. On May 1, 1959, Ladenburg and McKee entered into an agreement which specified that Ladenburg would pay over to McKee part of any profit realized by Ladenburg from the sale of Guerdon stock. On August 6, 1959, Ladenburg and McKee entered into a subsequent agreement purporting to cancel all the obligations of the May agreement, but at the same time calling for the rendering of unspecified future services by McKee in return for $100,000 payable in three equal annual installments. At the time of the trial, McKee had received two installments totalling $66,666.66 pursuant to this agreement. The district court, while rejecting a finding that Ladenburg by entering into the August agreement conspired to deprive Sahley of any share of the money due McKee from Ladenburg in connection with the Guerdon transaction, nevertheless found, in a finding unchallenged on this appeal, that the moneys paid to McKee under the August agreement were a substitute for what was due under the earlier agreement clearly connected with Guerdon.

After the entry of the judgment, Sahley moved for pre-verdict interest on his share of the Guerdon fee under § 5001(b) of the New York C.P.L.R.[3] With respect to Sahley's $50,000 share [4] of the moneys due from Ladenburg, the district court awarded interest from August 6, 1959, the date of the second

McKee-Ladenburg agreement, although in fact the first installment was not paid until October 7, 1959 and the second until April 14, 1960. As the joint venture between McKee and Sahley was to share moneys *received,* we believe that the pre-verdict interest should be calculated from the date McKee actually received payments from Ladenburg and the judgment is modified accordingly and with due regard to the partial satisfaction of the judgment as a result of Judge Cannella's decision.

Affirmed in part and modified in part.

---

3. Providing in part: "Interest shall be computed from the earliest ascertainable date the cause of action existed * * *."

4. At the trial below, McKee argued that at most he owed Sahley only $33,333.33 of the Ladenburg money as he had received

but two installments totalling $66,666.66. Subsequent to the initial judgment, however, Judge Cannella ordered Ladenburg to pay into court the outstanding portion of the $100,000 fee (in brief, Sahley concedes that this sum has been paid in partial satisfaction of the judgment).